**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jeri Sue WAGNER, a/k/a Pam Halsey,
Defendant–Appellant.**

**No. 92–2011.**

United States Court of Appeals,
Tenth Circuit.

May 18, 1993.

Tara C. Neda, Asst. U.S. Atty. (Don J. Svet, U.S. Atty., with her on the brief), Albuquerque, NM, for plaintiff-appellee.

Kenneth R. Brown, Salt Lake City, UT, for defendant-appellant.

Before MOORE and BRORBY, Circuit Judges, and THEIS,* Senior United States District Judge.

BRORBY, Circuit Judge.

Jeri Sue Wagner pleaded guilty to violating 21 U.S.C. § 841(d) for possessing a listed chemical (phenylacetic acid) with the intent to manufacture a controlled substance (methamphetamine). She appeals her sentence asserting the sentencing court incorrectly determined her criminal history by classifying her crime as a "controlled substance offense" and treating her as a "career offender" under the United States Sentencing Guidelines (hereinafter "Guidelines"). She also challenges certain factual findings. We agree with Ms. Wagner that her offense was not a "controlled substance" offense but we disagree that the disputed factual findings were clearly erroneous. In addition, we find the district court applied the wrong guideline in Ms. Wagner's sentencing and instruct the district court to resentence in accordance with this opinion.

## Base Offense Level

### A. The Chemicals.

To explain Ms. Wagner's sentencing, a brief description of chemicals involved in the manufacture of methamphetamine will be helpful. Phenylacetic acid is a listed chemical, 21 U.S.C. § 802(34), used in the production of methamphetamine, a controlled substance. U.S.S.G. § 2D1.11, comment. (backg'd); 21 C.F.R. § 1308.12 (1992). Phenylacetic acid is not, however, a controlled substance. *United States v. Kingston*, 922 F.2d 1234, 1237–39 (6th Cir.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2054, 114 L.Ed.2d 460 (1991). A third substance, phenylacetone/$P_2P$ (hereinafter "$P_2P$") was seized at the location of Ms. Wagner's arrest. $P_2P$ is an "immediate precursor" of methamphetamine. Immediate precursors are immediate chemical intermediaries of controlled substances and are classified as controlled substances. 21 U.S.C. § 802(23); 21 U.S.C. § 811(e). In the production of methamphetamine, phenylacetic acid is used to produce a lesser amount of $P_2P$, from which, in turn, a smaller amount of methamphetamine is derived.

### B. The Sentence.

Although Ms. Wagner pleaded guilty to possessing phenylacetic acid, the district court, adopting the findings of the presentence report, found that no phenylacetic acid had in fact been seized in connection with Ms. Wagner's arrest. An unspecified volume

---

* The Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation.

and concentration of $P_2P$ was seized from which approximately 108 grams of methamphetamine could have been produced. Subsequently, an addendum to the presentence report stated the volume of the $P_2P$ solution was one liter.

The district court used the estimated quantity of methamphetamine (108 grams), derived from the seized $P_2P$ (1 liter), to determine the offense guideline applicable to Ms. Wagner's sentence and her base offense level. The controlled substance guideline is U.S.S.G. § 2D1.1. Under that provision, the district court concluded 108 grams of methamphetamine warranted a base offense level of twenty-six. After adjustments, her base offense level was twenty-two.

Ms. Wagner contends the factual findings of the district court were inadequate or clearly erroneous, and that the district court abused its discretion by declining to hold an evidentiary hearing to resolve disputed sentencing factors. It is somewhat unclear whether she also challenges the offense guideline applied to her sentence, but we review the application for plain error in any case.

*C. Discussion.*

We review de novo whether the district court correctly applied the Guidelines. *United States v. Voss,* 956 F.2d 1007, 1009 (10th Cir.1992). Under the Guidelines, the first step in sentencing is to "[d]etermine the offense guideline ... most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. § 1B1.2(a). Here, the offense of conviction was possession of a listed chemical, phenylacetic acid, in violation of 21 U.S.C. § 841(d),[1] and the appropriate guideline was U.S.S.G. § 2D1.11. Section 2D1.11 is entitled "Unlawfully Distributing, Importing, Exporting, or Possessing a Listed Chemical: Attempt or Conspiracy," and specifical-

ly provides for offenses involving phenylacetic acid. Although not dispositive, we also note that the Guidelines cross-reference 21 U.S.C. § 841(d) and U.S.S.G. § 2D1.11. U.S.S.G. App. A (Nov.1991); *cf. Voss,* 956 F.2d at 1009. There is no dispute the offense guideline applicable to Ms. Wagner's offense is U.S.S.G. § 2D1.11.

■ Under U.S.S.G. § 2D1.11, the defendant's base offense level is determined by the listed chemical table, U.S.S.G. § 2D1.11(d), using the quantity of listed chemical involved in the crime. If no listed chemical was seized in connection with the offense, or the amount seized does not adequately reflect the severity of the crime, the substance quantity may be estimated upon proper testimony. *Cf. United States v. Short,* 947 F.2d 1445, 1457 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992). The estimate must be supported by some evidence exhibiting at least a minimum indicia of reliability, and the estimate must be established by a preponderance of the evidence. *Cf. United States v. Easterling,* 921 F.2d 1073, 1077 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *United States v. Havens,* 910 F.2d 703, 706 (10th Cir.1990) (proper testimony consisted of record-supported expert testimony), *cert. denied,* 498 U.S. 1030, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991); and U.S.S.G. § 2D1.11, comment. (n. 12) ("[w]here there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance."). In this case, the amount of $P_2P$ that was seized may, *inter alia,* bear on the quantity of phenylacetic acid that was involved in the offense. Accordingly, as an initial matter under U.S.S.G. § 2D1.11, Ms. Wagner's base offense level should be determined by U.S.S.G. § 2D1.11(d) using the amount of listed chemical seized in connection with her

---

1. 21 U.S.C. § 841(d) provides:
   Any person who knowingly or intentionally—
      (1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;
      (2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe

that the listed chemical will be used to manufacture a controlled substance except as authorized by this title; ...
   ....
shall be fined in accordance with Title 18, or imprisoned not more than 10 years, or both.

offense or an estimate of such a quantity if appropriate.

■ The calculation based upon the quantity of listed chemical, however, may not exhaust the proper application of § 2D1.11. As an additional calculation, U.S.S.G. § 2D1.11(c) is a cross-reference to apply U.S.S.G. § 2D1.1, the controlled substance guideline, when the offense involved manufacture or attempted manufacture of a controlled substance. A cross-reference is an instruction to apply another offense guideline. U.S.S.G. § 1B1.5(a). The application of cross-references is determined by real offense elements of the crime, including acts and omissions committed by the defendant, or by reasonably foreseeable acts and omissions of others in furtherance of jointly undertaken criminal activity, that occurred during the commission of the offense of conviction or were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3. Likewise, the "offense," unless otherwise specified, means "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.1, comment. (n. 1(*l*)). Under § 2D1.11(c), the defendant's offense level is the greater of the two levels calculated using the listed chemical or controlled substance tables.

Applying these rules, if Ms. Wagner manufactured or attempted to manufacture $P_2P$, a controlled substance, the district court should apply U.S.S.G. § 2D1.1 based on the quantity of $P_2P$ involved in the offense. The quantity of $P_2P$, in turn, should be determined by reference to the initial inquiry under § 2D1.11. Ms. Wagner is responsible for the amount of $P_2P$ that was produced, and the estimated quantity of $P_2P$ that could have been produced from the listed chemical. Of course, it may be that Ms. Wagner did not produce or attempt to produce the full amount of $P_2P$ that could theoretically be derived from the quantity of listed chemical. *Cf. United States v. Evans,* 970 F.2d 663, 678 (10th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 1288, 122 L.Ed.2d 680 (1993). If the offense level calculated by § 2D1.1(c) is greater than the level calculated by § 2D1.11(d), it applies to Ms. Wagner's sentencing.

This construction of the Guidelines with respect to the relevant amount of controlled substance for purposes of the cross-reference in § 2D1.11(c) is supported by the application notes to U.S.S.G. § 2D1.11. The notes provide that:

[i]n certain cases, the defendant will be convicted of an offense involving a listed chemical covered under this guideline, and a related offense involving an immediate precursor or other controlled substance covered under § 2D1.1 (Unlawfully Manufacturing, Importing, Exporting, or Trafficking). For example, $P_2P$ (an immediate precursor) and 3,4–methylenedioxyphenyl–2–propanone (a listed chemical) are used together to produce methamphetamine. Determine the offense level under each guideline separately. The offense level for 3,4–methylenedioxyphenyl–2–propanone is determined by using § 2D1.11. The offense level for $P_2P$ is determined by using § 2D1.1 ($P_2P$ is listed in the Drug Equivalency Table under LSD, PCP, and Other Schedule I and II Hallucinogens (and their immediate precursors)). Under the grouping rules of § 3D1.2(b), the counts will be grouped together. Note that in determining the scale of the offense under § 2D1.1, the quantity of both the controlled substance and listed chemical should be considered (*see* Application Note 12 in the Commentary to § 2D1.1).

U.S.S.G. § 2D1.11, comment. (n. 3).

■ Although this note applies by its terms only to a defendant convicted of two counts, one involving a listed chemical and the other a controlled substance, it should apply as well in cases such as this one where the defendant was convicted of only one count for possession of a listed chemical, but produced or attempted to produce a controlled substance. This conclusion is consistent with the philosophy of the Guidelines to make inconsequential a prosecutorial decision to charge either one or multiple counts. *See generally,* U.S.S.G. Ch. 1, Pt. A(4)(e).

This construction of the Guidelines is likewise not inconsistent with *Voss.* In that case, the issue was whether the controlled

substance guideline, § 2D1.1, applied to listed chemical offenses prior to the effective date of § 2D1.11. The court relied on § 2D1.11 inferentially for the proposition that prior to § 2D1.11 it was incorrect to apply § 2D1.1 to listed chemical offenses. *Voss*, 956 F.2d at 1011. We mention *Voss* only to clarify that because the court in that case did not reach the application of § 2D1.11 it is inapposite.

In short, the proper procedure for sentencing Ms. Wagner is as follows. The district court should apply § 2D1.11 to the amount of listed chemical involved in the offense. An estimate may be appropriate. The cross-reference in § 2D1.11(c), however, also applies as Ms. Wagner produced or attempted to produce $P_2P$, a controlled substance. The district court should consider the quantity of $P_2P$ involved in the offense based on the amount found, and the quantity of listed chemical. By U.S.S.G. § 2D1.1, the district court should convert the quantity of $P_2P$ into grams of marijuana by the Drug Equivalency Tables, U.S.S.G. § 2D1.1, comment. (n. 10), and apply that amount of marijuana to the controlled substance table, § 2D1.1(c), to determine Ms. Wagner's base offense level. Her base offense level is whichever is higher, the listed chemical offense level, or the controlled substance offense level. *See* U.S.S.G. § 2D1.11(c) and § 3D1.2(b). It is unclear whether in all cases the calculation under the controlled substance section will be higher, as in some cases not all the controlled substance that could be produced from the seized amount of listed chemical should be attributed to the defendant.

The district court erred in its application of the Guidelines because it applied § 2D1.1, the controlled substance guideline, as an initial matter, to a listed chemical offense when another guideline, § 2D1.11, was more applicable. The district court estimated the amount of methamphetamine that could have been produced from a seized quantity of $P_2P$ and applied that figure to § 2D1.1(c) to determine the base offense level. This was an error for two reasons. First, the district court should have begun with § 2D1.11, which is the appropriate guideline for the charged offense. Ultimately, the cross-refer-

ence in § 2D1.11 would have directed the district court to § 2D1.1, but it is unknown whether the calculation under § 2D1.1 would in all cases be higher than the listed chemical calculation under § 2D1.11(d). The error, therefore, was material. Application of the wrong guideline is plain error. *United States v. Smith*, 919 F.2d 123, 124 (10th Cir.1990). Second, the district court should have converted the seized amount of $P_2P$ into grams of marijuana under the drug equivalency table rather than into a hypothetical amount of methamphetamine. It is likewise possible that this error was material. Accordingly, we instruct the district court to resentence pursuant to the method outlined above and the instructions in the remainder of this opinion.

▪ We consider next the adequacy of the factual findings of the district court. Ms. Wagner contends the district court erred because the quantity of $P_2P$ considered in her sentencing was an estimate, not an actual figure. We review a "sentencing court's computation of the quantity of drugs implicated by a crime" under the clearly erroneous standard. *United States v. Coleman*, 947 F.2d 1424, 1427 (10th Cir.), *cert. denied*, ―― U.S. ――, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). Although the district court acted within its discretion in relying on the presentence report, *United States v. Hershberger*, 962 F.2d 1548, 1555 (10th Cir.1992); *United States v. Murillo*, 902 F.2d 1169, 1172 (5th Cir.1990), we nevertheless still determine whether findings of fact are clearly erroneous by the standard articulated by the Supreme Court in *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In *Bessemer*, the Supreme Court instructed that

> [i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Id.* at 573–74, 105 S.Ct. at 1507.

▪ We turn now to the record. The original presentence report did not identify the quantity of $P_2P$ found at the location of

the arrest; it identified only the amount of methamphetamine that was the estimated production from an undisclosed quantity of $P_2P$. It was this finding that was the basis of the sentence. An addendum to the presentence report determined the volume of $P_2P$ seized in connection with the offense was one liter.[2] The presentence report and addendum to the report do not disclose the source of the one-liter figure, nor is the source disclosed in the transcript of the sentencing hearing. No evidentiary hearing was held. Appended, however, to one of Ms. Wagner's submissions, and in the record, is a copy of a lab report which discloses the quantity of seized $P_2P$. This report states that the "estimated" volume of seized $P_2P$ was one liter. Based on this evidence, and the lack of any other, Ms. Wagner is correct that the volume was an estimate. Reliance on the estimate, however, was not error. As previously noted, the district court is entitled to estimate the quantity of substance seized. That the district court labeled its finding an actual amount, and not an estimate, does not itself require resentencing if the estimate is established by proper testimony by a preponderance of the evidence. The lab report established the accuracy of the estimate. Accordingly, the district court was entitled to rely on the one-liter figure.[3] *Compare United States v. Padilla,* 947 F.2d 893, 896 (10th Cir.1991) (no discernible basis for factual findings in record).

■ In general, however, we instruct that a substance estimate should be more explicit than was the case here. The sentencing court should make a finding of how much substance was actually seized. If this quantity does not reflect the severity of the offense, the district court may then estimate from proper testimony. In this case, the failure to follow this better course was not error because the one-liter figure was supported by the record. The district court should be mindful, however, that the use of an estimate without articulated reasons un-

dermines, at a minimum, the perception that the Guidelines are being fairly and consistently applied and should be avoided.

■ As a final matter, it was within the district court's discretion to not hold an evidentiary hearing and this discretion was not abused. *United States v. Gines,* 964 F.2d 972, 977–78 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993). Ms. Wagner appended a copy of the lab report to her submissions to the court. The presentence report was substantiated by the lab report. In this context, the district court properly exercised its discretion in declining to hold an evidentiary hearing.

## Criminal History.

Ms. Wagner contends possession of a listed chemical is not a controlled substance offense for purposes of the career offender provision of the Guidelines. We review the applicability of the career offender provision de novo. *United States v. Newsome,* 898 F.2d 119, 120 (10th Cir.), *cert. denied,* 498 U.S. 877, 111 S.Ct. 207, 112 L.Ed.2d 167 (1990). This exact question is apparently an issue of first impression in this circuit.

### A. The Sentencing

With respect to criminal history, the district court found Ms. Wagner had a criminal history category of four. It also concluded, however, that she was a career offender under U.S.S.G. § 4B1.1 insofar as: 1) she was at least eighteen years old at the time of the offense; 2) the offense was a felony involving a controlled substance; and 3) she had two prior felony convictions for controlled substance offenses. Because she was a career offender, the district court boosted her criminal history category to six, establishing an imprisonment range of 84 to 105 months for Ms. Wagner's base offense level. Ms. Wagner was sentenced to 105 months imprisonment.

---

**2.** Apparently the district court relied upon the one-liter figure to substantiate the estimated quantity of methamphetamine but did not convert the $P_2P$ directly into grams of marijuana for sentencing.

**3.** We wish to make clear that although the one-liter figure was not clearly erroneous, it may or may not be the correct figure for resentencing when the district court begins its analysis under the correct guideline.

*B. Discussion.*

■ We begin by laying out the relevant sections of the Guidelines and the statute which Ms. Wagner violated. According to the Guidelines, a defendant is a career offender if

(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions....

U.S.S.G. § 4B1.1. In addition, under the Guidelines and for purposes of the career offender provision, a controlled substance offense is defined as

an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(2).

Lastly, Ms. Wagner was convicted of violating 21 U.S.C. § 841(d) for possessing a listed chemical (phenylacetic acid). That section reads:

Any person who knowingly or intentionally—

(1) possesses a listed chemical with intent to manufacture a controlled substance except as authorized by this subchapter;

(2) possesses or distributes a listed chemical knowing, or having reasonable cause to believe that the listed chemical will be used to manufacture a controlled substance except as authorized by this title; ...

....

shall be fined in accordance with Title 18, or imprisoned not more than 10 years, or both.

The specific question we must answer is whether Ms. Wagner's violation of 21 U.S.C. § 841(d) was a controlled substance offense under U.S.S.G. § 4B1.1. We discern two necessary inquiries. First, if the application of the career offender provision is determined by the relevant conduct rules, i.e., real offense elements, Ms. Wagner plainly committed a controlled substance offense insofar as she manufactured P$_2$P, a controlled substance. Accordingly, we must decide if we look to real offense elements to determine the application of the career offender provision. Second, assuming the answer to the first question is no, we must decide if possession of a listed chemical with intent to manufacture a controlled substance is a controlled substance offense. The real inquiry with respect to this question is whether to treat 21 U.S.C. § 841(d) as an attempt statute. If so, the career offender provision plainly applies. U.S.S.G. § 4B1.2 comment. (n. 1). If not, by its plain terms the provision applies to possession or manufacture of controlled substances, and not to possession of listed chemicals.

Are the relevant conduct rules applicable? We look first to the text of the Guidelines. Under the Guidelines the offense, unless otherwise defined, includes the offense and all relevant conduct. U.S.S.G. § 1B1.1, comment. (n. 1(*l*)). The term "controlled substance offense," however, is specifically defined under the Guidelines, and in the absence of evidence to the contrary, a specific provision controls a general provision. Thus, we interpret § 4B1.1 based on the definition in § 4B1.2(2).

By the plain language of the controlled substance definition we must reject the Government's contention that because Ms. Wagner produced P$_2$P she committed a controlled substance offense. The definition of controlled substance refers directly to the *charged offense,* not the charged offense and all relevant conduct. The language plainly states that the inquiry is decided by reference to a *federal law* prohibiting possession of a controlled substance. The definition does not permit reference to relevant conduct; only the charged offense may be considered.

This reading is consistent with our interpretation of the Guidelines in analogous context. There has been considerable litigation with respect to the term "crime of violence" under the career offender provision. In

those cases, we have identified three inquiries under the term "crime of violence." A felony is a crime of violence if (1) the felony conviction has as one of its elements the use or threatened use of physical force against the person of another; (2) the felony conviction falls within an enumerated category; or (3) the crime committed otherwise includes conduct that presents a serious potential risk of physical injury. Only with respect to the third criterion is conduct applicable; and then because it is expressly referred to in the relevant guideline. In this case, there are only two criteria by which an offense is a controlled substance offense under the Guidelines, and they refer specifically to an offense under state or federal law that prohibits (1) manufacture or (2) possession with the intent to manufacture a controlled substance. The Guidelines definition of "controlled substance offense" is the exclusive meaning of that term. It does not refer to relevant conduct; therefore the charged offense, not the charged offense and relevant conduct, determines the application of the career offender provision.

■ Is the charged offense a controlled substance offense? The offense under federal law prohibits possession of a listed precursor chemical with the intent to manufacture a controlled substance. This is not, by its plain terms, a federal or state law that prohibits manufacture or possession of a controlled substance. One circuit has noted in another context that 21 U.S.C. § 841(d) describes criminal conduct that would constitute the crime of attempt to manufacture a controlled substance in the absence of 21 U.S.C. § 841(d) which makes the conduct a separate crime.[4] The argument is that as an attempt to manufacture a controlled substance is a controlled substance offense, U.S.S.G. § 4B1.2, comment. (n. 1), violating 21 U.S.C. § 841(d) should also be a controlled substance offense because the elements of that crime are sufficient to comprise the attempt to manufacture a controlled substance. This argument is not persuasive. The Guidelines specifically distinguish pos-

session of a controlled substance from possession of a listed chemical with the intent to manufacture a controlled substance. *Voss,* 956 F.2d at 1010. We do not wish to erode this distinction by holding that the term controlled substance offense means also listed chemical offense. The crime defined by Congress in 21 U.S.C. § 841(d), and the Guidelines, reflect that listed chemical crimes are to be considered to have a different and in some sense lesser degree of culpability than controlled substance crimes. *See Voss,* 956 F.2d at 1011–12. To treat a violation of 21 U.S.C. § 841(d) as akin to an attempt to manufacture a controlled substance is to erode this distinction. In short, the definition of controlled substance for purposes of the career offender section of the Guidelines refers to the charged offense. Ms. Wagner was not charged with the manufacture or possession or attempt to manufacture a controlled substance, so her conduct was not a controlled substance offense. Moreover, we will not redefine her charge as an attempt for purposes of applying the career offender provision.

### Plea Agreement

■ The final issue we must consider is what effect, if any, stipulations in a plea agreement signed by Ms. Wagner have on the sentencing. Ms. Wagner entered into a plea agreement stipulating the career offender provision applied to her sentencing. The Government contends that the plea agreement should be enforced. We disagree. It is well settled the terms of a plea agreement are not binding on the sentencing court. Fed.R.Crim.P. 11; *United States v. Richardson,* 901 F.2d 867, 869 (10th Cir.1990). The court has an obligation to correctly apply the Guidelines to the facts as it finds them, and it may not properly be constrained in the exercise of its duties by agreement of the parties. The district court does not in sentencing enforce a contract between the parties, but rather gives effect to the law as Congress has provided. The Government's argument

---

**4.** *United States v. Hyde,* 977 F.2d 1436 (11th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993). The court noted that attempt requires intent and a substantial

step, and that possession of phenylacetic acid would constitute a step and that the requisite intent was presupposed.

that if the career offender provision is not applied to Ms. Wagner, the terms of its "deal" with Ms. Wagner must be renegotiated, is entirely without merit. The Government's position is that Ms. Wagner stipulated the career offender provision applied to her sentencing, and in return, "the United States permitted [Ms.] Wagner to plea[d] to an information charging [a] lesser drug offense." Accordingly, because "dismissal of the indictment was predicated on [Ms.] Wagner's agreement ... the agreement must be honored." The Government cites *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), and *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986), for the proposition that plea agreements are like contracts and specific performance or revocation is the proper remedy upon breach. The Government is correct that plea agreements are frequently interpreted looking to contract analogies. *Reardon*, 787 F.2d at 516. A unilateral breach by one party to the agreement may relieve the other party of obligations under the agreement. *Id.* For the purposes of this case, however, the analysis suggested by the Government is irrelevant. Ms. Wagner has not "breached" the plea agreement; she has merely appealed an incorrect application of the Guidelines. 18 U.S.C. § 3742(a)(2). The plea agreement, of course, is not "enforceable" against the district court. *Richardson*, 901 F.2d at 860. As the Government has not argued Ms. Wagner lacked the power or right to appeal or that the agreement is binding on the district court, we fail to see how Ms. Wagner breached the agreement or against whom to enforce it. The parties to a plea agreement may not agree to incorrectly apply the Guidelines and seek to enforce the agreement instead of the correct application. The Government exercised its discretion in electing the charges to bring against Ms. Wagner. At that point the district court was obligated to correctly apply the Guidelines to the facts. We review the application of the Guidelines and instruct the district court to resentence if we find error. Here, we find error because the offense for which Ms. Wagner was convicted did not prohibit possession of a controlled substance, and was therefore not a controlled substance offense.

We instruct the district court to vacate the sentence and to resentence Ms. Wagner under the appropriate guideline, correctly applied, using Ms. Wagner's criminal history, not the career offender provision.