UNITED STATES of America, Plaintiff,

v.

Jessie AILSWORTH, Jr., a/k/a "J.C.", Undra P. Mock, George Stewart, Jr., a/k/a "Pigg," and Calvin Conway, Defendants.

Nos. 94–40017–01–SAC, 94–40017–02–SAC, 94–40017–06–SAC and 94–40017–07–SAC.

United States District Court,
D. Kansas.

July 20, 1995.

512

Joseph D. Johnson, Joseph D. Johnson, Chtd., Topeka, KS, Charles D. Dedmon, Office of Federal Public Defender, Topeka, KS, for Jessie Ailsworth, Jr.

F.G. Manzanares, Jerold E. Berger, Topeka, KS, for Undra P. Mock.

Stephen W. Kessler, Topeka, KS, for George Stewart, Jr.

Jeannine D. Herron, Topeka, KS, William K. Rork, Rork Law Office, Topeka, KS, for Calvin Lee Conway.

## MEMORANDUM AND ORDER

CROW, District Judge.

On November 28, 1994, the court commenced jury selection for the trial of Jessie Ailsworth, Jr., Undra P. Mock, George Stewart, Jr., Calvin Conway, Terrance J. Douglas and Kenneth Torain. Arnett Rice, the seventh codefendant, had previously been severed from the other codefendants. *See United States v. Ailsworth*, 873 F.Supp. 1450 (D.Kan.1994) (explaining reasons for granting Rice's motion for severance). If convicted of all charges, each defendant faced substantial mandatory minimum sentences. During voir dire, each of the defendants except for Torain entered plea agreements with the government.[1]

In pertinent part, each of the plea agreements provides:

4. Defendant will provide the United States Attorney's Office for the District of Kansas with a full and truthful accounting and statement of all knowledge he has concerning his involvement and the involvement of all other people known to defendant in the matters charged in the Second Superseding Indictment of this case. This will be done in the form of a complete oral debriefing by defendant, to law enforcement officials, and will be subject to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11, except that it could and would be used to impeach defendant in the event that he decided to testify in this matter, for the government or the defense.

5. Further, defendant agrees to submit to a polygraph examination and pass same for truthfulness, regarding all representations made by defendant during said oral debriefing regarding his knowledge concerning his involvement and the involvement of all other people known to defendant in the matters charged in the Second Superseding Indictment of this case.

6. Further, if called upon to do so, defendant agrees to testify truthfully and completely in the trials of other individuals involved in the offenses charged in the Second Superseding Indictment of this case.

7. In exchange for defendant's plea of guilty and his full, complete and truthful cooperation, and if necessary his testimony in this investigation, pending case, and any future cases, the United States Attorney's Office for the District of Kansas agrees to the following:

a. Dismiss the remaining counts of the Second Superseding Indictment at the time of his sentencing, and to bring no further criminal charges against defendant resulting from the activities which form the basis of the Second Superseding Indictment in these matters [1];

b. To immediately separate defendant from his codefendants and make arrangements that he will remain on separate status from all codefendants and those associated with them for the duration of this incarceration;

c. If appropriate, prior to sentencing, to file a motion pursuant to U.S.S.G. § 5K1.1, to reduce his sentence to reflect his substantial assistance, if any, in the investigation and/or prosecution of another person(s) involved in this offense or other offenses; and

d. If appropriate, after sentencing, to file a motion pursuant to Fed.R.Crim.P. 35, to reduce his sentence to reflect his substantial assistance, if any, in the investigation and/or prosecution of another person(s) involved in this offense or other offenses.

8. The defendant acknowledges and understands that the decision, whether to file this motion and whether he has provided substantial assistance, is a matter that resides in the sole and exclusive discretion of the United States Attorney for the District of Kansas.

.    .    .    .    .

13. Should defendant, in the sole opinion of the United States Attorney's Office for the District of Kansas, not comply ful-

---

1. After November 1994, the grand jury returned a third superseding indictment against Torain and Rice. Rice entered a guilty plea on March 17, 1995. Torain entered a guilty plea on April 17, 1995, approximately two days before his trial was scheduled to commence.

ly, truthfully and honestly with the terms of this agreement, the United States Attorney's Office for the District of Kansas shall be immediately released from its obligations hereunder and may reinstate prosecution as if no agreement had been reached.[1]

[1] The original indictment and the superseding indictment will also be dismissed.

a. Defendant is aware and understands that his willful failure to provide truthful information and testimony pursuant to this plea agreement could subject him to additional prosecution, including but not limited to charges of perjury and obstruction of justice.

14. This written Plea Agreement supersedes any and all other agreements or negotiations which the parties may have previously reached or discussed, and this written plea agreement embodies each and every term of the agreement among the parties.

On March 31, 1995, Terrance Douglas was sentenced. Based upon Douglas' substantial assistance, the United States filed a motion pursuant to United States Sentencing Commission, *Guidelines Manual,* § 5K1.1 (**Substantial Assistance To Authorities**). After considering the government's § 5K1.1 motion and all of the other relevant facts and circumstances, the court sentenced Terrance J. Douglas to a primary term of incarceration of sixty months, a sentence substantially below the guideline range.

This case comes before the court upon the defendants' "Motion to enforce plea agreements or in the alternative set aside pleas" (Dk.495). In that motion, Ailsworth, Mock,

Stewart and Conway argue that while they have performed their part of the bargain, the government has not. The defendants contend that United States, and in particular, the Assistant United States Attorney (AUSA), Greg Hough, has not abided by the express terms of the plea agreements each defendant has entered. The defendants essentially allege bad faith by the government. Absent a motion pursuant to § 5K1.1 by the government, the defendants face substantial sentences of incarceration.[2]

Specifically, the defendants contend that during their respective polygraphs, they were asked questions which were not related to their debriefing. The defendants contend that such questions violated the terms of the plea agreements. The defendants also question the validity of the polygraph examination and the propriety of the questions which were asked during the examination. The defendants apparently contend that the substance or phrasing of the questions rendered the polygraph results unreliable. The defendants seek an order compelling the government to abide by the terms of the plea agreement, or in the alternative to withdraw their pleas.

The government responds, arguing that each of the defendants has "breached" the plea agreements, and therefore its failure to file a § 5K1.1 motion is not a breach of the plea agreements.[3] The government contends that in no way did the questions that were asked deviate from the terms of the plea agreement. The government essentially contends that because each of the defendants failed a polygraph, it was not obligated to file a § 5K1.1 motion. The government also

**2.** "In *Wade v. United States,* 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Supreme Court held that absent an unconstitutional motive for refusing to do so, the prosecutor enjoys complete discretion in determining whether to file a substantial assistance motion, and that a claim seeking to compel a motion based on a defendant's view of what he or she deems to have been 'substantial assistance' will not be entertained." *United States v. Massey,* 997 F.2d 823, 824 (10th Cir.1993). The Supreme Court's opinion in *Wade* does not, however, preclude a defendant from arguing that the government has breached a plea agreement in failing to file a motion pursuant to § 5K1.1. *Id.* "Congress wisely or unwisely left the matter of substantial

assistance to the prosecutor, unless there's a formal agreement which would bind the prosecutor." *Id.*

**3.** In contract parlance, it might be more accurate to state that the government's obligation to file a § 5K1.1 motion was conditioned upon each defendant's performance of the plea agreement. If a defendant did not fulfill that condition, the government's duty to file a § 5K1.1 motion was discharged. *See Restatement (Second) of Contracts* § 224–225 (1981). If the defendants fulfilled the condition, then the government's failure to perform would be a breach of the agreement.

notes that the defendant's failure to provide information or cooperation warranting a § 5K1.1 motion does not foreclose the possibility of a motion pursuant to Fed.R.Crim.P. 35. The government emphatically denies that it has acted in bad faith in this case.

On May 3, 1995, and May 22, 1995, the court conducted hearings on the defendants' motion. Following the hearings, Conway, Stewart and Mock filed briefs in support their respective positions in this case. The government filed a consolidated response. Based upon the court's conclusion that additional oral argument would not materially assist in deciding the pending motion, the matter is deemed submitted on the briefs and on the oral arguments advanced by counsel in both the May 3, 1995, and May 22, 1995, hearings.

### Enforcement of the Plea Agreement

### Legal Standards:

■ The government must fulfill any promise that it expressly or impliedly makes in exchange for a defendant's guilty plea. *United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992) (*citing Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)), *cert. denied,* — U.S. ——, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993). "In determining the rights of a defendant, or the government, under a plea agreement in a criminal proceeding the '[c]ourts have frequently looked ·to contract law analogies.'" *United States v. Gamble,* 917 F.2d 1280, 1282 (10th Cir.1990) (*quoting United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), *cert. denied,* 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981)); *United States v. Wagner,* 994 F.2d 1467, 1476 (10th Cir.1993).[4] Plea agreements are contracts, and their content and meaning are determined according to ordinary contract principles. *Ingram,* 979 F.2d at 1184 (citations omitted); *see United States v. Mesa–Rincon,* 911 F.2d 1433, 1446 (10th Cir.1990) ("[P]lea bargains are governed by contract principles.").

"'Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence.'" *United States v. Stemm,* 847 F.2d 636, 637 (10th Cir.1988) (*quoting United States v. Reardon,* 787 F.2d 512, 516 (10th Cir.1986) (citation omitted).

The Supreme Court has stated that the Government may not breach any term of a plea agreement which induced a defendant to plead guilty. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971). Accordingly, when a defendant has entered into a plea agreement with the Government, the court must ensure that he/she receives what is reasonably due him/her under the agreement. *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.), *cert. denied,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). Thus, if a defendant lives up to his/her end of the bargain, the Government is bound by its promises. *Id.* (citing *United States v. Garcia,* 698 F.2d 31, 37 (1st Cir.1983)). However, if a defendant fails to fulfill his/her promises, the Government is released from its obligations under the agreement and may indict and try the defendant regardless of whatever it may have promised earlier. *Id.* (citing *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir.1985); *Ricketts v. Adamson,* 483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987)).

*United States v. Tilley,* 964 F.2d 66, 70 (1st Cir.1992). "A unilateral breach by one party to the agreement may relieve the other party of obligations under the agreement." *Wagner,* 994 F.2d at 1476.

■ "When construing a plea agreement, we look to what the defendant 'reasonably understood' when entering his plea." *United States v. Easterling,* 921 F.2d 1073, 1079 (10th Cir.1990). "When 'a plea [is] predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea.'" 921 F.2d at 1080 (*quoting United States v. Hand,* 913 F.2d

---

4. "The analogy to contract law doctrines is not determinative in the area of plea negotiation, however. Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by

adequate 'safeguards to insure the defendant what is reasonably due [in] the circumstances.'" *Calabrese,* 645 F.2d at 1390 (*quoting Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971)).

854, 856 (10th Cir.1990)). Any ambiguities in the plea agreement will be resolved against the drafter. *United States v. Massey*, 997 F.2d 823, 824 (10th Cir.1993).

■ To borrow another contract concept, there must exist in all plea agreements a duty of good faith and fair dealing. If this doctrine exists in general contract law, surely due process and notions of fairness would impose such a duty on the government in the plea bargaining process. *See United States v. Rexach*, 896 F.2d 710, 714 (2nd Cir.) ("Nevertheless, the prosecutor's discretion is not completely unlimited. There is, as [the defendant] argues, an implied obligation of good faith and fair dealing in every contract."), *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990).

■ Upon finding that the government has breached a plea agreement, the court, in its discretion, must fashion an appropriate remedy. *Santobello*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99; *United States v. Pinter*, 971 F.2d 554 (10th Cir.1992). Specific performance of the plea agreement may be an appropriate remedy if the government has in fact breached its agreement with the defendant. *See Santobello*, 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Maranzino*, 860 F.2d 981, 985–986 (10th Cir.1988) (a defendant may obtain specific performance of any promises made by the prosecution in exchange for a guilty plea).

In order to decide the defendant's motion, the court must first determine whether a plea agreement existed and also determine the terms of that agreement. *See Stemm*, 847 F.2d at 637 (citation omitted) ("In considering any claim that the U.S. Attorney has breached a plea agreement, we must first determine the nature of the prosecutor's promise."). Once the court determines that an agreement was reached, the court must determine (1) whether the agreement has been breached and (2) which party has breached the agreement. In deciding these issues, the court recognizes that "[t]he issue of a defendant's breach is not an issue to be finally determined unilaterally by the government." *Calabrese*, 645 F.2d at 1390. "We believe that constitutional principles of fairness also require that once the government

acknowledges the existence of an agreement, the government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable." *Id.*

■ "When a plea agreement leaves discretion to the prosecutor, the court's role is limited to deciding whether the prosecutor has made its determination in good faith." *United States v. Vargas*, 925 F.2d 1260, 1266 (10th Cir.1991) (*citing United States v. Rexach*, 896 F.2d 710, 714 (2d Cir.), *cert. denied*, 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990)); *see United States v. Leonard*, 50 F.3d 1152, 1157 (2nd Cir.1995).

### Extrinsic Evidence

■ Paragraph number fourteen of each of the plea agreements is apparently an integration clause. A phrase in a plea agreement stating that "no promises or representations have been made, nor agreements reached, other than those set forth in this agreement" is the equivalent of an integration clause in a regular contract. *United States v. Rutledge*, 900 F.2d 1127, 1132 (7th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). "The presence of the integration clause in the plea agreement indicates an intent by the parties to have this writing constitute the final expression of their agreement." *Young v. United States*, 747 F.Supp. 305, 309 (E.D.N.C.) *aff'd*, 915 F.2d 1566 (4th Cir.1990) (Table). A written agreement that fully embodies the agreement of the parties is the exclusive source of the parties rights and obligations with respect to the particular transaction and may not be varied or contradicted by parol evidence in the absence of mistake or fraud. *Id.* at n. 2.

It is a fundamental principle of contract interpretation that extrinsic evidence is inadmissible to prove the meaning of a contract that is unambiguous on its face. A contractual provision is ambiguous if it is subject to more than one reasonable interpretation. *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1298 (7th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 208, 121 L.Ed.2d 148 (1992). Whether a contract is ambiguous or unambiguous

on its face is a question of law and is subject to review de novo. *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986). *Ingram,* 979 F.2d at 1185.

## Issues

### Did the Government breach the plea agreement?

The defendants articulate two ways in which the government has violated its part of the bargain:

1. The polygraph examination itself was defective in that: (1) The questions asked of each of the defendants during the polygraph examination were of such a nature that its results are unreliable; and/or (2) The examination was administered in an improper fashion.

2. Even if the questions were properly formulated for use during a polygraph examination, the questions were not based upon the information disclosed during the debriefings, and therefore the government breached its obligations under the terms of the plea agreement.

The court will address each of the issues *seriatim.*

### 1. Was the polygraph examination itself defective and therefore unreliable?

The defendants essentially challenge the efficacy of the polygraph examination. The defendants argue that the examination was administered in a manner making the results unreliable. Specifically, the defendants contend that the presence of Agent Hernandez in the room and other distractions during the examination resulted in inaccurate and false readings. The defendants also argue the questions which were asked were of such an open-ended nature that it was impossible to give answers that were not perceived as false.

### Summary of Testimony

George Johnson, the polygraph examiner who administered each of the examinations, testified at the hearing. Johnson, who has been a polygraph examiner for eighteen years, has had extensive experience in the administering polygraph examinations. Johnson testified that distractions, such as the presence of other persons in line of sight of the subject, may undermine the accuracy of the polygraph examination. Johnson testified, however, that Agent Hernandez, while present in the room during at least two of the polygraph examinations, was not in the subject's line of sight. In Johnson's opinion, each examination was performed in a manner consistent with his training and experience.

During each of the polygraph examinations, a series of questions were posited to the subjects. As the validity of the polygraph examination turns in part upon the proper phrasing of the questions, Johnson drafted the questions propounded to the subjects. Johnson testified that in his opinion the questions were properly crafted to provide accurate examination results. Johnson based the questions upon information provided by Greg Hough, the Assistant United States Attorney prosecuting this case, and Agent Hernandez. Johnson had not read any of the plea agreements or the second superseding indictment in this case prior to administering the polygraph examinations. Nevertheless, Johnson was and apparently remains of the opinion that the information provided by the defendants was insufficient to be characterized as "substantial assistance" warranting the filing of a § 5K1.1 motion.

In contrast to Johnson's testimony, Calvin Conway testified that Agent Hernandez was sitting in his line of sight during a portion of the polygraph examination. Conway also testified that even after Johnson requested Agent Hernandez to move, he could still see Agent Hernandez in his peripheral vision.

### Analysis

Based upon its assessment of the testimony, the court is not persuaded that the polygraph examinations were *in general* inherently defective so as to make their results completely unreliable. While it may be true that Agent Hernandez was out of Conway's line of sight, his presence was a potential source of distraction. In the future, if it is reasonably possible, such potential distractions should be avoided so as to obviate the need to resolve similar issues.

As to the proper drafting of the questions, the court finds no fatal infirmity in the questions asked of either Stewart or Conway.[5] One question asked of both Ailsworth and Mock causes the court serious concern. Ailsworth was asked the following question: "Did you have a gun in your possession or under your control while present at any crack cocaine transaction during 1993 or '94?" Mock was asked this question: "Did you have a gun in your possession while present at any crack cocaine transaction during 1993 or '94?" Both Ailsworth and Mock answered "No."

After his polygraph examination was completed, Ailsworth explained that while at a poker game he possessed a gun; while at the poker game, crack cocaine transactions transpired. Ailsworth was not, however, charged with those transactions. Ailsworth denied possessing a firearm during any of the charged, transactions. Following his polygraph examination, Mock made a similar disclosure.

The questions relating to the possession of a firearm during a drug transaction were a source of confusion and potentially the cause of their "failing" the polygraph examination. It is possible that the questions asked of Ailsworth and Mock during the polygraph examination were not drafted in a manner that accurately measured the truthfulness of the subject's response. The questions covered approximately a one year time span and presumably numerous transactions, nor were they specifically limited or tied to the second superseding indictment. In short, it appears that the questions were not narrowly tailored to measure the truthfulness of the precise issue that was intended to be explored. Because the United States apparently views the results of polygraph examination as an integral part of its evaluation of whether the pleading defendant has provided substantial

assistance, it is equally important that the polygraph examination be performed in a manner calculated to give the most accurate results.

On this basis and out of an abundance of caution, the court finds that a second polygraph examination of Ailsworth and Mock is warranted. The court suggests that every effort be made to avoid similar types of confusion in the drafting of new or additional questions. The parties shall abide by the procedure and timeline set forth below.

Because the polygraph examinations administered to both Stewart and Conway were not inherently flawed, the court must now consider the alternative argument advanced for enforcement of the plea agreements.[6]

**2. Even if the questions were proper to use during a polygraph examination, the questions were not based upon the information disclosed during the debriefing, and therefore the government breached its obligations under the terms of the plea agreement.**

The defendants contend that the government breached the plea agreement by asking questions during the polygraph examination which was not based upon information they provided during the oral debriefing. The government responds, apparently taking the position that the questions during the polygraph examination were proper because they "dealt with allegations contained in the Second Superseding Indictment, and discovery in this matter."

At first blush, the defendants' construction of the plea agreement seems unlikely. However, by the express terms of the plea agreement, each of the defendants agreed "to a polygraph examination and pass same for truthfulness, regarding all representations made by defendant during said oral debriefing regarding his knowledge concerning his

---

5. Like Ailsworth and Mock, Conway was asked if "[b]etween 19 Mar 93 & 20 Mar 94, were you in possession of a gun during any crack cocaine transaction?" Unlike Ailsworth and Mock, however, Conway did not relate any facts during his post-test interview indicating that this question was a potential source of confusion. Nevertheless, the court suggests that if the government intends to inquire into this same area during the second polygraph examination, that this question

be more narrowly tailored to address the same types of concerns raised by Ailsworth and Mock.

6. To the extent that the questions asked of Ailsworth and Mock may have inadvertently concerned transactions or events outside the second superseding indictment, this analysis is applicable to them.

involvement and the involvement of all other people known to defendant in the matters charged in the Second Superseding Indictment of this case." In its opening brief, the government does not attempt to explain whether the questions asked during the polygraph were based upon the oral debriefing; instead, in its brief the government apparently takes the position that the questions were proper because they related to the crime charged.[7]

The court is not satisfied that *all* of the questions asked during each of the polygraph examinations were based upon information disclosed during the oral debriefing of the defendants regarding the crimes charged in the second superseding indictment. The government admitted during oral argument that one question asked of Conway was not based upon his debriefing. *See* Transcript of [May 3, 1995] Motions Hearing (Dk.542) at 108–109. The defendants also correctly argue that some of the questions asked during the polygraph examination were not directly related to the crimes charged in the second superseding indictment. This is significant in that the defendants' "deceptive" responses to questions beyond the scope of the plea agreement may have caused the defendants to "fail" the polygraph examination. Although the government may have become aware of certain information during its investigation of the crimes charged, it does not follow that such information automatically involved matters charged in the second superseding indictment, or more importantly, was necessarily a part of the defendants' debriefing. The court simply notes that the government agents debriefing the defendants were apparently the persons in control of those interviews.

Therefore, unless the government's interpretation of the plea agreements is correct, *i.e.,* that the defendants were obligated to answer questions during the polygraph examination which dealt with allegations contained in the second superseding indictment and discovery in this matter, whether or not

discussed in the oral debriefing, the government has breached the terms of those agreements in its execution of the polygraph examinations. The only support for the government's interpretation of the plea agreements is found in paragraph 7, which provides:

> In exchange for defendant's plea of guilty and his full, complete and truthful cooperation, and if necessary his testimony in this investigation, pending case, and any future cases, the United States Attorney's Office for the District of Kansas agrees to the following ...

One possible but doubtful reading of this paragraph supports the government's position. "[F]ull, complete and truthful cooperation" would have to impose a general obligation overriding or expanding the defendants' obligations beyond the specific terms and conditions of paragraphs 4, 5 and 6. Paragraph 7 would therefore contemplate cooperation above and beyond that specifically set forth in paragraphs 4, 5 and 6. Under this interpretation, the government's contention that the questions asked during the polygraph examination related to activities "in this case" would be correct. *See* Second Superseding Indictment, Count I (charging conspiracy to possess with intent to distribute crack cocaine between March 19, 1993, and March 22, 1994).

On the other hand, the term "cooperation" used in paragraph 7 could be interpreted to only refer to the cooperation which the defendants specifically agreed to provide in paragraphs 4, 5 and 6. This interpretation is supported by a logical reading of the entire agreement and would seemingly be supported by two standards of preference in contract interpretation found in § 203 of the *Restatement (Second) of Contracts* (1981): "(a) an interpretation which gives a reasonable lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect;" and "(c) specific terms and exact

---

7. However, during the May 3, 1995, hearing, government's counsel stated that "the plea agreement clearly provided that the defendants must pass a polygraph regarding their debriefing." See Transcript of Motions Hearing (Dk.542) at

107–108. In contrast, in its closing brief, the government argues that the questions asked during the polygraph examination were derived from the debriefings of the defendants.

terms are given greater weight than general language."

The court concludes that the latter reading is the better interpretation and most logical construction of the plea agreements. First, the court notes that the government drafted these agreements and any ambiguities should be construed against it. The government's draftsmanship should not provide a basis to expand the obligations of the defendants beyond the express terms of the agreement. Second, paragraphs 4, 5 and 6 spell out with specificity the obligations of the defendants. If the defendants fulfill those specific requirements, the defendants would apparently have satisfied their portion of the express terms of the bargain. It also deserves mention that *all* defense counsel understood this to be the manner in which the plea agreement was intended to operate and in turn explained this interpretation to each of their respective clients. This understanding is supported by the express terms of the plea agreements. At one point during the oral argument, even the government's counsel interpreted the plea agreements in the manner construed by the court. Consequently, the court concludes that by asking questions not based upon the oral debriefing, the government has breached the terms of the plea agreement.

■ Having reached this conclusion, the defendants are nevertheless not automatically entitled to a § 5K1.1 motion.[8] Most of the defendants acknowledge that their failure to pass a second polygraph exam would preclude a § 5K1.1 motion. Moreover, any defendant that "passes" the second polygraph exam is not automatically entitled to a § 5K1.1 motion.

At this juncture, the court must endeavor to remedy the breach of the plea agreements

by the government. The first and most appropriate step is to return to the point where the breach occurred. It is therefore necessary to administer a second polygraph examination, free of the infirmities of the first examination, to each of the defendants. Each of these polygraph examinations shall be administered in the following manner:

(1) The government, with the aid of a qualified polygraph examiner, shall fashion questions based upon the debriefings provided by each of the defendants.

(2) Within ten days of the date of this order, and prior to performing the polygraph examinations, the government shall provide each defendant's counsel with a copy of the questions that it intends to posit during the polygraph examinations.

(3) Within three days of receipt of that list, defendant shall file any objections in writing to any questions that will be asked during the polygraph examination.

The parties, in particular the government, may see this procedure as a useless exercise. The government has indicated in open court that had the defendants passed the polygraph examinations when they were originally administered, based upon the information provided by the defendants, each of the defendants may have been deemed to have provided substantial assistance. *See* Transcript of [May 3, 1995] Motions Hearing (Dk.542) at 99 (AUSA Hough: "The fact that they failed, the fact that they lied, that is critical to the decision on whether or not a 5(k) motion was merited."). However, based upon the defendants' failure to pass the first polygraph examinations, coupled with the passage of time and other intervening events, namely the pleas of Torain and Rice, the government may not file a § 5K1.1 motion on

---

8. Conway argues that he is not similarly situated to his codefendants as his counsel was originally informed by the government that if the information Conway provided was true and that he passed the polygraph examination, that "a § 5K1.1 appeared appropriate." After Conway "flunked" the polygraph examination, the government changed its position and refused to file a § 5K1.1 motion. *See* Stipulation of Counsel, Transcript of Motions Hearing, Volume II at 193 (Dk.548).

Contrary to the position taken by Conway, these facts do not distinguish him from the other defendants. An early assessment of Conway's performance by the government, couched in terms of possibilities, does not constitute the basis of a breach of the plea agreement. Under the plea agreement, Conway sought the good faith performance of the agreement by the government in court; the government's oral indication that a § 5K1.1 motion "appeared" appropriate and subsequent decision not to file such a motion is not in-and-of-itself a breach.

behalf of any of the defendants, even if they pass a second polygraph examination. As the court has not come to that particular bridge yet, it is unnecessary at this point in the road to resolve that issue. The court simply observes that it has the authority to fashion an appropriate remedy for a breach of the plea agreement.

### Withdrawal of Plea

In light of the court's ruling on the defendants' motion to enforce the plea agreements, the defendants' alternative motion to set aside the pleas is denied.

IT IS THEREFORE ORDERED that the defendants' "Motion to enforce plea agreements or in the alternative set aside pleas" (Dk.495) is granted in part and denied in part as set forth in the body of this opinion. The parties shall follow the procedure and timeline set forth in the body of this opinion.