NONPRECEDENTIAL DISPOSITION
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2008
Decided January 18, 2008

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 07-2007

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Central District of Illinois |
| *v.* | No. 06-20003-01 |
| ERIC A. CURTNER, *Defendant-Appellant.* | Michael P. McCuskey, *Chief Judge* |

**O R D E R**

Police in Matoon, Illinois, stopped a car driven by Eric Curtner and discovered a pipe bomb in the glove box. A federal jury found him guilty of possessing an unregistered destructive device, *see* 26 U.S.C. §§ 5861(d), 5845(a)(8), (f), and the district court sentenced him to 120 months' imprisonment. Curtner filed a timely notice of appeal, but his newly appointed lawyer moves to withdraw because she cannot discern a nonfrivolous basis for the appeal. *See Anders v. California*, 386 U.S. 738, 744 (1967). Curtner opposes that motion. *See* CIR. R. 51(b). Counsel's supporting brief is facially adequate, and we limit our review to the potential issues discussed by counsel and Curtner. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

On December 13, 2005, Matoon police officer Jeff Branson observed a Pontiac Grand Prix pass his patrol car at normal speed. Branson did not recognize the car,

but he thought he recognized the bearded driver as Charlie Cowger. Branson knew that Cowger did not have a valid driver's license, so he signaled for the Grand Prix to stop while he and his partner confirmed over the radio that Cowger did not have a valid license.

When Branson approached the car, he was surprised to find that it was not Cowger behind the wheel but Curtner. Curtner also had a beard, though his was trimmed closer than Cowger's, and his hair was darker than Cowger's. But Branson also knew Curtner from previous contacts and suspected that he, too, lacked a valid driver's license, so he asked Curtner whether that was the case. Curtner replied that his license was suspended, and Branson arrested him. Branson then found the seven-inch pipe bomb while searching the Grand Prix. He showed it to Curtner and asked what it was, and Curtner said it was a "fire bomb" that belonged to him, not his girlfriend, who owned the car. Later, after being read the *Miranda* warnings, Curtner again admitted that the device was his.

After the matter was referred to federal authorities for prosecution, Curtner wrote the district court complaining that his appointed lawyer would not move to suppress the pipe bomb or his incriminating statements. The court construed that letter as a motion to suppress, and convened an evidentiary hearing. At the hearing counsel told the court that he "would have to concede" that "clearly there were grounds for a *Terry* stop," but he argued that Branson nonetheless should have allowed Curtner to leave when he realized the driver was not Cowger. The court rejected this theory, and the jury rejected Curtner's defense that he didn't know the device constituted an illegal destructive device.

Counsel and Curtner first consider whether Curtner could argue that the district court should have suppressed the pipe bomb and his statements on grounds that both the mistaken traffic stop and subsequent detention were unlawful. Any challenge to the initial stop, however, would be frivolous because during the suppression hearing trial counsel waived any claim about the stop when he explicitly conceded that it was supported by reasonable suspicion. *See United States v. Murdock*, 491 F.3d 694, 698 (7th Cir. 2007) ("[A]n argument that has been waived is unreviewable on appeal."); *United States v. Cooper*, 243 F.3d 411, 415-16 (7th Cir. 2001) (explaining that waiver occurs "where either a defendant or his attorney expressly declined to press a right or to make an objection"). But Curtner still could argue, as he did in the district court, that it was unlawful for Branson to prolong his detention after realizing that Curtner was not the man he intended to stop.

We agree with appellate counsel, however, that any challenge to the continued detention would be frivolous. When evaluating a ruling on a motion to suppress, we review the district court's legal conclusions de novo and its findings of

fact for clear error. *United States v. Barnett*, 505 F.3d 637, 639 (7th Cir. 2007). Here, as noted by the district court, Branson's brief and immediate inquiry about the status of Curtner's license was reasonable; Curtner conceded that he already had been lawfully stopped, and Branson's inquiry did not itself prolong the stop. *See United States v. Muriel*, 418 F.3d 720, 725-26 (7th Cir. 2005) (explaining that police may ask questions unrelated to purpose of traffic stop so long as they do not unreasonably prolong the detention); *United States v. Childs*, 277 F.3d 947, 949 (7th Cir. 2002) (en banc) ("[Q]uestions that do not increase the length of detention (or that extend it by only a brief time) do not make the custody itself unreasonable or require suppression of evidence found as a result of the answers."). It was Curtner's answer that caused his further detention, but of course Branson had probable cause to make an arrest as soon as Curtner acknowledged that his license was suspended. *See* 625 ILL. COMP. STAT. 5/6-303.

In her *Anders* brief counsel also considers whether Curtner could pursue additional suppression claims that were never raised or discussed in the district court. Counsel first evaluates whether Curtner might contend that the search of the glove box was not incident to his arrest because he already was detained in Branson's police cruiser when the search was conducted. Counsel also discusses whether Curtner might claim that the district court should have suppressed his initial admission that the object in the glove box was a "fire bomb" belonging to him, since Branson asked about it before administering *Miranda* warnings. Counsel concludes that both contentions would be frivolous on the merits, but we cannot review a forfeited suppression claim, not even for plain error, without a prior showing of "good cause" for the forfeiture. *See* FED. R. CRIM. P. 12(e); *United States v. Johnson*, 415 F.3d 728, 730-31 (7th Cir. 2005). Counsel, though, has not articulated *any* cause for Curtner's forfeiture of these new claims, and for that reason alone it would be frivolous to present them on appeal. *See United States v. Brodie*, 507 F.3d 527, 531 (7th Cir. 2007) ("This court has repeatedly held that there is no good cause to excuse a Rule 12 forfeiture where a defendant files a timely motion to suppress on one ground, and later seeks to assert a new ground for suppression for the first time on appeal.").

Next, counsel and Curtner explore whether Curtner could challenge the sufficiency of the evidence underlying his conviction. We agree with counsel that this, too, would be a frivolous argument. Section 5861(d) makes it unlawful "to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). Firearms requiring registration include "destructive devices." *Id.* § 5845(a)(8), (f). At trial Curtner conceded that the government's expert testimony established that the pipe bomb, which was not registered to Curtner, qualified as a "destructive device" requiring registration. And Curtner's admissions that it was his device established knowing possession. The only issue for the jury, then, was whether the government had

proved that Curtner knew his "fire bomb" had the "particular characteristics that brought this weapon within the scope" of the registration requirement. *See United States v. Jones*, 222 F.3d 349, 352 (7th Cir. 2000); *see also Staples v. United States*, 511 U.S. 600, 619 (1994).

There is ample evidence for a rational jury to have concluded that Curtner did, in fact, know that the device was within the scope of the statute. We have held that the knowledge element is met when the defendant is aware that the features of the device brought it within the realm of regulation. *See United States v. Edwards*, 90 F.3d 199, 205 (7th Cir. 1996). Branson testified that Curtner referred to the device as a "fire bomb" which he planned to explode for recreational purposes. Branson noted, however, that the device did not resemble a commercially manufactured firecracker, and was completely wrapped in tape and sealed. Branson's partner testified that Curtner told him a buddy made it for him. Moreover, an ATF agent testified that Curtner's device contained an explosive combination of potassium perchlorate, potassium nitrate, and sulfur packed in a solid casing that would project shrapnel at high velocity and could cause serious bodily injury or death. The nature and design of the 7½-inch bomb could lead a rational jury to conclude that Curtner knew it was a type of explosive that one must register to legally possess, and no ordinary firecracker.

Counsel concludes by considering whether Curtner might challenge the district court's application of the sentencing guidelines, or the reasonableness of his prison sentence. We agree with counsel, however, that any sentencing challenge would be frivolous because Curtner withdrew his objections to the guidelines calculations, and because his prison term was capped at the 10-year statutory maximum, well below the otherwise-applicable guidelines range of 140 to 175 months. We note, though, that in his Rule 51(b) response Curtner contends for the first time that his base offense level of 26 is overstated because, he insists, his two state convictions for unlawful possession of chemicals used in the manufacture of methamphetamine are not "controlled substance offenses" as defined in U.S.S.G. 4B1.2(b), and thus should not have triggered the enhanced offense level in U.S.S.G. § 2K.2.1(a)(1) applicable to a defendant who violates § 5861(d) after twice being convicted of a controlled substance offense. Curtner cites as support *United States v. Wagner*, 994 F.2d 1467 (10th Cir. 1993), but that decision preceded a 1997 amendment which expressly rejected *Wagner* and clarified that "unlawfully possessing a listed chemical with intent to manufacture a controlled substance . . . is a 'controlled substance offense.'" U.S.S.G. App. C, vol. 1, Amend. 568, p. 529.

Counsel's motion to withdraw is GRANTED, and the appeal is DISMISSED.