UNITED STATES of America, Plaintiff,

v.

Jessie AILSWORTH, Jr., a/k/a "J.C.", Undra P. Mock, George Stewart, Jr., a/k/a "Pigg," and Calvin Conway, Defendants.

Case Nos. 94–40017–01, 94–40017–02, 94–40017–06 and 94–40017–07.

United States District Court, D. Kansas.

May 7, 1996.

Joseph D. Johnson, Joseph D. Johnson, Chtd., Topeka, KS, Charles D. Dedmon, Office of Federal Public Defender, Topeka, KS, for Jessie Ailsworth, Jr.

F.G. Manzanares, Topeka, KS, Jerold E. Berger, Topeka, KS, for Undra P. Mock.

James G. Chappas, Jr., Topeka, KS, for Kenneth R. Torain.

Mark L. Bennett, Jr., Bennett & Dillon, Topeka, KS, Benjamin C. Wood, Lawrence, KS, for Arnett Louise Rice.

Matthew B. Works, Works, Works & Works, P.A., Topeka, KS, Amy C. Bixler, Alan G. Warner, Topeka, KS, for Terence J. Douglas.

Stephen W. Kessler, Topeka, KS, for George Stewart, Jr.

Jeannine D. Herron, Topeka, KS, William K. Rork, Rork Law Office, Topeka, KS, for Calvin Lee Conway.

Gregory G. Hough, Office of United States Attorney, Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The long history of this case is summarized as follows:

March 24, 1994:

The grand jury returns a twenty count superseding sealed indictment charging certain violations of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine base), 21 U.S.C. § 841(a)(1) (possession with intent to distribute), 7 U.S.C. § 2024(b) (unlawful acquisition of food stamps), 18 U.S.C. § 924(c)(1) (use of a firearm during and in relation to a drug trafficking crime), and 26 U.S.C. § 5861(h) (receipt or possession of a firearm without serial number or other identification).

November 28, 1994:

The court commenced jury selection for the trial of Jessie Ailsworth, Jr., Undra P. Mock, George Stewart, Jr., Calvin Conway, Terence J. Douglas and Kenneth Torain. Arnett Rice, the seventh codefendant, had previously been severed from the other codefendants. *See United States v. Ailsworth,* 873 F.Supp. 1450 (D.Kan.1994) (explaining reasons for granting Rice's motion for severance). If convicted of all charges, each defendant faced substantial mandatory minimum sentences. During voir dire, each of the defendant's except for Torain entered plea agreements with the government.[1]

In pertinent part, each of the plea agreements provides:[2]

4. Defendant will provide the United States Attorney's Office for the District of Kansas with a full and truthful accounting and statement of all knowledge he has concerning his involvement and the involvement of all other people known to defendant in the matters charged in the Second Superseding Indictment of this case. This will be done in the form of a complete oral debriefing by defendant, to law enforcement officials, and will be subject to Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11, except that it could and would be used to impeach defendant in the event that he decided to testify in this matter, for the government or the defense.

5. Further, defendant agrees to submit to a polygraph examination and pass same for truthfulness, regarding all representations made by defendant during said oral debriefing regarding his knowledge concerning his involvement and the involvement of all other people known to defendant in the matters charged in the Second Superseding Indictment of this case.

6. Further, if called upon to do so, defendant agrees to testify truthfully and completely in the trials of other individuals involved in the offenses charged in the Second Superseding Indictment of this case.

7. In exchange for defendant's plea of guilty and his full, complete and truthful cooperation, and if necessary his testimony in this investigation, pending case, and any future cases, the United States Attorney's Office for the District of Kansas agrees to the following:

a. Dismiss the remaining counts of the Second Superseding Indictment at the time of his sentencing, and to bring no further criminal charges against defendant resulting from the activities which form the basis of the Second Superseding Indictment in this matters[1];

---

[1] The original indictment and the superseding indictment will also be dismissed.

b. If appropriate, prior to sentencing, to file a motion pursuant to U.S.S.G. § 5K1.1, to reduce his sentence to re-

---

1. After November 1994, the grand jury returned a third superseding indictment against Torain and Rice. Rice entered a guilty plea on March 17, 1995. Torain entered a guilty plea on April 17, 1995, approximately two days before his trial was scheduled to commence.

2. In its July 20, 1995, memorandum and order, the court erroneously included a paragraph 7b regarding the separation of the defendant from his codefendants. *See United States v. Ailsworth,* 899 F.Supp. 511, 513 (D.Kan.1995). That paragraph was not included in final version of each defendant's plea agreement.

flect his substantial assistance, if any, in the investigation and/or prosecution of another person(s) involved in this offense or other offenses; and

c. If appropriate, after sentencing, to file a motion pursuant to Fed.R.Crim.P. 35, to reduce his sentence to reflect his substantial assistance, if any, in the investigation and/or prosecution of another person(s) involved in this offense or other offenses.

8. The defendant acknowledges and understands that the decision, whether to file this motion and whether he has provided substantial assistance, is a matter that resides in the sole and exclusive discretion of the United States Attorney for the District of Kansas.

. . . . .

13. Should defendant, in the sole opinion of the United States Attorney's Office for the District of Kansas, not comply fully, truthfully and honestly with the terms of this agreement, the United States Attorney's Office for the District of Kansas shall be immediately released from its obligations hereunder and may reinstate prosecution as if no agreement had been reached.

a. Defendant is aware and understands that his willful failure to provide truthful information and testimony pursuant to this plea agreement could subject him to additional prosecution, including but not limited to charges of perjury and obstruction of justice.

14. This written Plea Agreement supersedes any and all other agreements or negotiations which the parties may have previously reached or discussed, and this written plea agreement embodies each and every term of the agreement among the parties.

April 7, 1995:

Ailsworth, Mock, Stewart and Conway file a joint motion to enforce plea agreements or in the alternative set aside pleas. The defendants argue that although they have performed their part of the bargain, the government has not.

July 20, 1995:

The court enters a memorandum and order granting in part and denying in part the defendants' "Motion to enforce plea agreements or in the alternative set aside pleas" (Dk. 495). In that memorandum and order, the court concluded that the government had not complied with the terms of the plea agreements entered with each of the defendants by asking certain questions during the polygraph examination which were either (1) not narrowly tailored to measure the truthfulness of the precise issue that was intended to be explored or (2) related to matters beyond the scope of the defendant's oral debriefing.

In pertinent part, the court's order stated: It is therefore necessary to administer a second polygraph examination, free of the infirmities of the first examination, to each of the defendants.

Each of these polygraph examinations shall be administered in the following manner:

(1) The government, with the aid of a qualified polygraph examiner, shall fashion questions based upon the debriefings provided by each of the defendants.

(2) Within ten days of the date of this order, and prior to performing the polygraph examinations, the government shall provide each of the defendants with a copy of the questions that it intends to posit during the polygraph examinations.

(3) Within three days of a defendant's receipt of that list, he shall file any objections in writing to any questions that will be asked during the polygraph examination.

*United States v. Ailsworth*, 899 F.Supp. 511, 520 (D.Kan.1995).

September 11, 1995:

Court enters memorandum and order overruling defendants' objections to questions to be asked during second polygraph examination. *See United States v. Ailsworth*, No. 94–40017–01, 02, 06–07–SAC, 1995 WL 646809 (D.Kan. Sept. 11, 1995).

October 20, 1995:

Court enters a one-page order denying the defendants' motion to stay polygraph examinations (Dk. 597). *See* (Dk. 600).

October 23, 1995:

A polygraph examination is administered to Conway and Stewart. The polygraph examiner concludes that Conway was being deceptive when answering relevant questions. The polygraph examiner concludes that Stewart was being truthful when answering relevant questions.

October 24, 1995:

A polygraph examination is administered to Ailsworth. The polygraph examiner concludes that Ailsworth was being truthful when answering relevant questions.

November 5, 1995:

A polygraph examination is administered to Mock. The polygraph examiner concludes that Mock was being truthful when answering relevant questions.

November 29, 1995:

Court enters memorandum and order which, *inter alia,* denies renewed objections to format of second polygraph examination and to polygraph examiner George Johnson. *See United States v. Ailsworth,* 914 F.Supp. 426 (D.Kan.1995).

December 12, 1995:

Court enters memorandum and order denying Conway's motion to reconsider rulings and to challenge polygraph results. *See United States v. Ailsworth,* No. 94–40017–01, 02, 06–07–SAC, 1995 WL 783623 (D.Kan. Dec. 12, 1995).

December 14, 1995:

Stewart files a "motion to compel performance of plea agreement" (Dk. 617). Prior to filing this motion, the government has apparently indicated to each of the defendants that it does not plan to file a § 5K1.1 motion on behalf of any of the defendants.

December 15, 1995:

Court enters order continuing sentencing hearing of each defendant. Court set date of December 26, 1995, for filing any motion to enforce the plea agreement or seeking alternative relief. Any defendant failing to file such a timely motion will be deemed to have waived any argument that the government has not fulfilled its obligations under the terms of the respective plea agreements.

December 21, 1995:

Conway files a "motion to compel performance of plea agreement" (Dk. 621).

December 14, 1995:

Government files a response to Conway's motion to compel performance of plea agreement (Dk. 619).

December 26, 1995:

Undra Mock files a "motion to compel performance of plea agreement" (Dk. 622).

January 5, 1996:

Government files **under seal** a consolidated response to the defendants' motions to enforce the plea agreements (Dk. 626).

January 10, 1996:

Ailsworth files a "Renewed motion to enforce plea agreement" (Dk. 628). In that motion, Ailsworth acknowledges that the court's December 15, 1995, order set a deadline for filing this motion and that the deadline has already passed. Ailsworth, nevertheless asks the court to consider his renewed motion.

This case comes before the court upon the following motions:

Stewart's "Motion to compel performance of plea agreement" (Dk. 617).

Conway's "Motion to compel performance of plea agreement" (Dk. 621).

Undra Mock's "Motion to compel performance of plea agreement" (Dk. 622).

Ailsworth's "Renewed motion to enforce plea agreement" (Dk. 628).

In the government's consolidated response (Dk. 626), it incorporates all of its previous responses, including its direct response to Stewart's motion to compel performance of plea agreement.

On February 16, 1996, the court conducted a hearing to consider the defendants' motions. The court, having considered the briefs and arguments of counsel, the evidence presented including the proffer of each of the parties, and the applicable law, is now prepared to rule.

### Legal Standards

U.S.S.G. § 5K1.1 states in relevant part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an

offense, the court may depart from the guidelines."

Section 5K1.1, by its express terms, conditions the district court's consideration of a defendant's substantial assistance claim upon a prior motion of the government. U.S.S.G. § 5K1.1; *United States v. Perez,* 955 F.2d 34, 35 (10th Cir.1992). The government's motion "is an unequivocal condition precedent[, and] the court may not act sua sponte" to determine that a defendant provided substantial assistance. *United States v. Vargas,* 925 F.2d 1260, 1267 (10th Cir.1991). This condition precedent limits the district court's authority and "gives the government a power, not a duty, to file a § 5K1.1 motion when a defendant has substantially assisted." *Wade v. United States,* 504 U.S. 181, 184, 112 S.Ct. 1840, 1843, 118 L.Ed.2d 524 (1992).

Federal district courts have the authority to review a prosecutor's discretionary refusal to file a substantial assistance motion in only three instances. *See United States v. Easter,* 981 F.2d 1549, 1554 (10th Cir.1992) (government's power under § 5K1.1 is exclusive); *United States v. Long,* 936 F.2d 482, 483 (10th Cir.), cert. denied, 502 U.S. 1015, 112 S.Ct. 662, 116 L.Ed.2d 753 (1991) (district courts are jurisdictionally barred from evaluating substantial assistance of defendant absent motion by government). District courts can review the government's refusal to move pursuant to § 5K1.1 only if the refusal violates an agreement with the government, *Wade,* 504 U.S. at 184, 112 S.Ct. at 1843, if the refusal was based on an unconstitutional motive, *id.* at 186, 112 S.Ct. at 1844, or "in an egregious case ... where the prosecution stubbornly refuses to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaningful relief," *United States v. Kuntz,* 908 F.2d 655, 657 (10th Cir.1990). When a Defendant asserts that the government breached an agreement that leaves discretion to the prosecutor, the district court's role is limited to deciding whether the government made the determination in good faith. *United States v. Robinson,* 978 F.2d 1554, 1569 (10th Cir.1992).

*United States v. Lee,* 989 F.2d 377, 379–380 (10th Cir.1993). *See United States v. Resto,* 74 F.3d 22 (2nd Cir.1996) ("'[W]here the explicit terms of a cooperation agreement leave the acceptance of the defendant's performance to the sole discretion of the prosecutor, that discretion is limited by the requirement that it be exercised fairly and in good faith.'") (quoting *United States v. Khan,* 920 F.2d 1100, 1105 (2nd Cir.1990), cert. denied, 499 U.S. 969, 111 S.Ct. 1606, 113 L.Ed.2d 669 (1991)); *United States v. Estrada,* No. 94–5728, 1995 WL 761092, at *2 (4th Cir. Dec. 7, 1995) ("When the government has promised a motion in return for substantial assistance and fails to move for a departure, the district court may inquire into a possible breach of the plea agreement; this necessarily requires the court to determine whether the defendant has given substantial assistance.") (unpublished).

### Enforcement of the Plea Agreement

#### Legal Standards:

■■■ The government must fulfill any promise that it expressly or impliedly makes in exchange for a defendant's guilty plea. *United States v. Ingram,* 979 F.2d 1179, 1184 (7th Cir.1992) (*citing Santobello v. New York,* 404 U.S. 257, 261, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)), cert. denied, 507 U.S. 997, 113 S.Ct. 1616, 123 L.Ed.2d 176 (1993). "In determining the rights of a defendant, or the government, under a plea agreement in a criminal proceeding the '[c]ourts have frequently looked to contract law analogies.'" *United States v. Gamble,* 917 F.2d 1280, 1282 (10th Cir.1990) (*quoting United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.), cert. denied, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981)); *United States v. Wagner,* 994 F.2d 1467, 1476 (10th Cir.1993).[3] Plea agreements are contracts, and their con-

---

**3.** "The analogy to contract law doctrines is not determinative in the area of plea negotiation, however. Because important due process rights are involved, plea negotiations must accord a defendant requisite fairness and be attended by adequate 'safeguards to insure the defendant what is reasonably due [in] the circumstances.'" *Calabrese,* 645 F.2d at 1390 (*quoting Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)).

tent and meaning are determined according to ordinary contract principles. *Ingram,* 979 F.2d at 1184 (citations omitted); *see United States v. Mesa–Rincon,* 911 F.2d 1433, 1446 (10th Cir.1990) ("[P]lea bargains are governed by contract principles.").

■ " 'Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence.' " *United States v. Stemm,* 847 F.2d 636, 637 (10th Cir.1988) (*quoting United States v. Reardon,* 787 F.2d 512, 516 (10th Cir.1986) (citation omitted).

The Supreme Court has stated that the government may not breach any term of a plea agreement which induced a defendant to plead guilty. *Santobello v. New York,* 404 U.S. 257, 262[, 92 S.Ct. 495, 498, 30 L.Ed.2d 427] (1971). Accordingly, when a defendant has entered into a plea agreement with the Government, the court must ensure that he/she receives what is reasonably due him/her under the agreement. *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.), *cert. denied,* 484 U.S. 989[, 108 S.Ct. 510, 98 L.Ed.2d 508] (1987). Thus, if a defendant lives up to his/her end of the bargain, the Government is bound by its promises. *Id.* (citing *United States v. Garcia,* 698 F.2d 31, 37 (1st Cir.1983)). However, if a defendant fails to fulfill his/her promises, the Government is released from its obligations under the agreement and may indict and try the defendant regardless of whatever it may have promised earlier. *Id.* (citing *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir.1985); *Ricketts v. Adamson,* 483 U.S. 1[, 107 S.Ct. 2680, 97 L.Ed.2d 1] (1987)).

*United States v. Tilley,* 964 F.2d 66, 70 (1st Cir.1992). "A unilateral breach by one party to the agreement may relieve the other party of obligations under the agreement." *Wagner,* 994 F.2d at 1476.

■ "When construing a plea agreement, we look to what the defendant 'reasonably understood' when entering his plea." *United States v. Easterling,* 921 F.2d 1073, 1079 (10th Cir.1990), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991). "When 'a plea [is] predicated in any significant degree on a promise or agreement with the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea.' " 921 F.2d at 1080 (*quoting United States v. Hand,* 913 F.2d 854, 856 (10th Cir. 1990)). Any ambiguities in the plea agreement will be resolved against the drafter. *United States v. Massey,* 997 F.2d 823, 824 (10th Cir.1993).

■ To borrow another contract concept, there must exist in all plea agreements a duty of good faith and fair dealing. If this doctrine exists in general contract law, surely due process and notions of fairness would impose such a duty on the government in the plea bargaining process. *See United States v. Rexach,* 896 F.2d 710, 714 (2nd Cir.) ("Nevertheless, the prosecutor's discretion is not completely unlimited. There is, as [the defendant] argues, an implied obligation of good faith and fair dealing in every contract."), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990).

■ Upon finding that the government has breached a plea agreement, the court, in its discretion, must fashion an appropriate remedy. *Santobello,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99; *United States v. Pinter,* 971 F.2d 554 (10th Cir.1992). Specific performance of the plea agreement may be an appropriate remedy if the government has in fact breached its agreement with the defendant. *See Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Maranzino,* 860 F.2d 981, 985–986 (10th Cir.1988) (a defendant may obtain specific performance of any promises made by the prosecution in exchange for a guilty plea).

■ In order to decide the defendant's motion, the court must first determine whether a plea agreement existed and also determine the terms of that agreement. *See Stemm,* 847 F.2d at 637 (citation omitted) ("In considering any claim that the U.S. Attorney has breached a plea agreement, we must first determine the nature of the prosecutor's promise."). Once the court determines that an agreement was reached, the court must determine (1) whether the agreement has been breached and (2) which party has breached the agreement. In deciding these issues, the court recognizes that "[t]he

issue of a defendant's breach is not an issue to be finally determined unilaterally by the government." *Calabrese,* 645 F.2d at 1390. "Consistent with the contract law-based analysis that governs plea agreement disputes, the party who asserts a breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence." *Allen v. Hadden,* 57 F.3d 1529, 1534 (10th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 544, 133 L.Ed.2d 447 (1995). "We believe that constitutional principles of fairness also require that once the government acknowledges the existence of an agreement, the government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable." *Calabrese,* 645 F.2d at 1390.

"When a plea agreement leaves discretion to the prosecutor, the court's role is limited to deciding whether the prosecutor has made its determination in good faith." *United States v. Vargas,* 925 F.2d 1260, 1266 (10th Cir.1991) *(citing United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.), *cert. denied,* 498 U.S. 969, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990)); *see United States v. Leonard,* 50 F.3d 1152, 1157 (2nd Cir.1995).

### Extrinsic Evidence

▆▆▆ Paragraph number fourteen of each of the plea agreements is apparently an integration clause. A phrase in a plea agreement stating that "no promises or representations have been made, nor agreements reached, other than those set forth in this agreement" is the equivalent of an integration clause in a regular contract. *United States v. Rutledge,* 900 F.2d 1127, 1132 (7th Cir.), *cert. denied,* 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). "The presence of the integration clause in the plea agreement indicates an intent by the parties to have this writing constitute the final expression of their agreement." *Young v. United States,* 747 F.Supp. 305, 309 (E.D.N.C.), *aff'd,* 915 F.2d 1566 (1990) (Table). A written agreement that fully embodies the agreement of the parties is the exclusive source of the parties' rights and obligations with respect to the particular transaction and may not be varied or contradicted by parol evidence in the absence of mistake or fraud. *Id.* at n. 2.

It is a fundamental principle of contract interpretation that extrinsic evidence is inadmissible to prove the meaning of a contract that is unambiguous on its face. A contractual provision is ambiguous if it is subject to more than one reasonable interpretation. *Ooley v. Schwitzer Div., Household Mfg. Inc.,* 961 F.2d 1293, 1298 (7th Cir.1992), *cert. denied,* 61 U.S.L.W. 3150[, 506 U.S. 872, 113 S.Ct. 208, 121 L.Ed.2d 148] (U.S. Oct. 5, 1992) (No. 92–256). Whether a contract is ambiguous or unambiguous on its face is a question of law and is subject to review de novo. *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986).

*Ingram,* 979 F.2d at 1185.

### Arguments of the Parties

As a general assessment of the arguments advanced, the defendants in the case at bar primarily argue that the government's refusal to file a motion pursuant to § 5K1.1 violates the terms of the plea agreement. As indicated above, Ailsworth, Mock and Stewart "passed" their respective polygraph examinations; Conway did not. The defendants contend that the government's refusal to file a § 5K1.1 motion is a breach of the plea agreements. The defendants contend the government's initial breach of the plea agreements, coupled with the passage of time, the pleas of both Torain and Rice, and the government's incorrect assessment of their cooperation and assistance have combined to deny each of them the relief to which they are entitled: a motion pursuant to § 5K1.1. The defendants contend that the government's decision not to file § 5K1.1 motion is motivated by bad faith.

The defendants also contend that in assessing their substantial assistance, the government has erroneously construed the plea agreement to require the defendants to provide information beyond that which they were required to disclose. Specifically, the defendants contend that by the terms of the plea agreement, they were only required to provide truthful information regarding their own involvement in the crimes charged in the second superseding indictment. Because the government, in determining whether the de-

fendants have provided substantial assistance, has potentially considered whether they have provided information regarding other crimes, the defendants contend the government has breached the plea agreement.

Highly summarized, the defendants make the following additional arguments:

## Stewart's Arguments:

Stewart contends that the government knew that he did not have information to provide beyond the information the government already possessed. Stewart contends that it was understood that his "substantial assistance" would consist primarily of corroborating information already in the possession of the government. Stewart contends that he always stood ready to testify if so asked by the government. Stewart contends that "the only difference between [his] situation and that of his co-defendant Douglas is that the first polygraph given to him did not comply with the terms of the plea agreement."

Stewart contends that he has fulfilled the terms of the plea agreement. Stewart contends that by administering the polygraph examination in a manner inconsistent with the terms of the plea agreement, the government has caused the delay during which the defendants Torain and Rice entered their pleas. Stewart also states:

> The government has previously indicated in open court that had defendant passed the first polygraph he may have been deemed to have provided substantial assistance, but now that the remaining defendants have entered pleas it does not intend to file a 5K1.1 motion even though the defendant passed the second test.

Stewart Memorandum in support of his motion to compel performance of plea agreement (Dk. 618 at 4).

## Mock's Arguments:

Mock contends by the terms of the plea agreement, if he "passed" the polygraph examination "then the government would file a U.S.S.G. 5K1.1 motion for downward departure." Mock contends that the government's failure to file a § 5K1.1 motion is based upon the government's incorrect construction of the plea agreement. Mock contends that the government has construed the plea agreement to require him to make statements outside his briefing and outside the second supersedeas indictment—a construction of the agreement contrary to the agreement between the parties. Like Stewart, Mock contends that the only difference between himself and Douglas is the fact that Douglas "passed" the first polygraph examination.

Mock contends that by the terms of the plea agreement, if he passed a polygraph examination concerning the information provided during his debriefing that the government is compelled to file a § 5K1.1 motion.

## Conway's Arguments:

During February of 1995, Assistant United States Attorney Greg Hough informed counsel for Conway that if the information Conway provided was true and that he passed the polygraph examination, that "a § 5K1.1 appeared appropriate." Conway again contends that because of these statements by the government indicating to his counsel that he had provided substantial assistance, he is entitled to a § 5K1.1 motion.[4]

Conway contends that he has provided valuable information, but that the government has simply chosen not to act upon that information or to bother to determine whether the information that he has provided is truthful.

## Ailsworth's Arguments:

Ailsworth notes that he passed the second polygraph examination and incorporates the memorandum of law previously filed in sup-

---

**4.** This same argument was previously rejected by the court in its July 22, 1995, memorandum and order:

> Contrary to the position taken by Conway, these facts do not distinguish him from the other defendants. An early assessment of Conway's performance by the government, couched in terms of possibilities, does not constitute the basis of a breach of the plea agreement. Under the plea agreement, Conway sought the good faith performance of the agreement by the government in court; the government's oral indication that a § 5K1.1 motion "appeared" appropriate and subsequent decision not to file such a motion is not in-and-of-itself a breach.

*Ailsworth*, 899 F.Supp. at 520, n. 8. These statements can be used, however, in assessing the AUSA's credibility and explanations for not filing a § 5K1.1 motion.

port of his initial motion to enforce the plea agreement.

**Government's response:**

The government responds, denying that it has acted in bad faith. The government contends that its failure to file a § 5K1.1 motion is simply a product of the fact that the defendants have not provided substantial assistance.[5] The government contends that even though Ailsworth, Mock and Stewart passed the second polygraph examination, none of the defendants, including Conway, provided useful information or otherwise provided substantial assistance.

The government denies the defendants' allegation that their failure to pass the first polygraph examination is the sole reason it has not filed a § 5K1.1 motion. "The polygraph examinations were merely a factor to be considered in determining whether any defendant was truthful during their debriefings regarding the charges contained in this Indictment." The government simply contends that none of the defendants have provided information qualifying as "substantial assistance." "In fact, each of the aforementioned defendants have (sic) obstructed justice in this matter by initially providing false information to the Government, consistently providing no useful information to the Government and making allegations to the contrary." "None of the four (4) defendants has ... provided any information that would lead to the investigations, arrests and/or prosecutions of other individuals involved in this case or other matters."

**5.** During oral argument, counsel for the government contended that this court did not have jurisdiction to grant the defendants' requests for relief. This argument is not only incorrect as a matter of law, but is contrary to cases cited by the government in its own memoranda. The government's advancement of such spurious arguments does little to aid the court in the disposition of the pending dispute.

In the same vein of meritless arguments, the government indicated that the defendants' guilty pleas and subsequent disclosure of information provided the government with nothing of value. The fact that each defendant entered a guilty plea did provide the government with several benefits. Most importantly, the government was spared the substantial investment of time, money and resources necessary to try these defendants. Trial in this multi-defendant case was anticipated to take several weeks. Based upon the slow prog-

**Analysis**

Unfortunately, the defendants have not specifically couched their motions to enforce the plea agreements to expressly state under which of the permitted three circumstance(s) they challenge the government's decision not to file a § 5K1.1 motion. Apparently no defendant argues that the government's refusal to file a 5K1.1 motion was based on an unconstitutional motive. Presumably then, the defendants seek review based upon their contention that the government's refusal to move pursuant to § 5K1.1 violates the terms of the plea agreements.[6]

In this case, under the terms of the agreement the decision to file a § 5K1.1 motion was committed to the sole discretion of the government. However, the government's discretion is not unbridled—the government's determination of substantial assistance must be in good faith.

## ISSUES

1. **UNDER THE TERMS OF THE PLEA AGREEMENT, DOES THE FACT THAT A DEFENDANT "PASSED" A POLYGRAPH EXAMINATION AUTOMATICALLY ENTITLE SUCH DEFENDANT TO A MOTION PURSUANT TO § 5K1.1?**

 The defendants apparently argue that under the terms of the plea agreement, the fact that they passed the polygraph examination automatically entitles them to a § 5K1.1 motion. This interpretation of the plea agreement is incorrect. As the govern-

ress during voir dire it was clear that a substantial amount would be invested in the trial of this case. As to the government's arguments regarding the post-plea information provided by the defendants, that issue is discussed below.

**6.** It appears that the defendants [Conway in particular] may also be arguing that this is an egregious case where the prosecution has stubbornly refused to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaningful relief. Because the government's alleged breach of the plea agreement stems from its "erroneous" assessment of each defendant's assistance, the determination of whether or not a defendant is entitled to relief essentially turns on the same issue: Has the government acted in good faith in assessing the assistance provided by each of the defendants?

ment suggests, the passage of a polygraph examination was simply a factor for the government to use in evaluation the assistance of the defendants. In its July 20, 1995, memorandum and order, the court made the following observation regarding the inclusion of a provision requiring the defendants to take polygraph examinations:

> Because the United States apparently views the results of polygraph examination as an integral part of its evaluation of whether the pleading defendant has provided substantial assistance, it is equally important that the polygraph examination be performed in a manner calculated to give the most accurate results.

*Ailsworth,* 899 F.Supp. at 520. Obviously, the failure of a polygraph examination would constitute a failure to perform a condition of the plea agreement and in any event would undermine any defendant's argument that his assistance was substantial—for the government could reasonably choose not to rely on unverified information.[7] Conversely, by the terms of the plea agreement, the mere fact that the defendant passed a polygraph examination was not an automatic entitlement to a § 5K1.1 motion.

## 2. ARE THE DEFENDANTS ENTITLED TO SPECIFIC PERFORMANCE OF THE PLEA AGREEMENTS, I.E. SHOULD THE COURT COMPEL THE GOVERNMENT TO FILE A § 5K1.1 MOTION?

■ As to defendant Conway, because he did not pass the second polygraph exam he

has not performed his part of the bargain.[8] *See United States v. Santiago–Gonzalez,* 66 F.3d 3, (1st Cir.1995) (where government's obligation to file a § 5K1.1 motion was conditioned on defendant submitting and passing a polygraph examination, defendant's failure to pass polygraph breached agreement and government was therefore entitled to exercise its discretion not to file a § 5K1.1 motion).

■ As to the remaining defendants, the court is unable to conclude that they are entitled to specific performance of the plea agreements. During oral argument, counsel for each of the defendants indicated that during the plea negotiations, counsel for the government had indicated to each of the them that for purposes of filing a § 5K1.1 motion in this case, "substantial assistance" would be defined to mean that each defendant would provide complete and truthful disclosure of information relevant to his own participation in the conspiracy charged in the second superseding indictment.[9] Assuming, *arguendo,* those statements of defendants' counsel are true, the defendants have not articulated a manner by which such a definition of "substantial assistance" may be included as part of the contract in light of the written terms of the fully integrated plea agreement.

As indicated above, paragraph 14 is apparently an integration clause. Although the court agrees that by fulfilling the conditions set forth in paragraphs 1, 4, 5 and 6, each

---

7. The plea agreements do not include a provision which indicate that passage of a polygraph examination automatically entitles a defendant to a § 5K1.1 motion, nor can the plea agreements be logically construed in that way.

8. Conway once again contends that the second polygraph exam was defective as one of the questions indicated the wrong date. *See* Motion to Reconsider Ruling and to Challenge Polygraph Results (Dk. 608). The court has overruled Conway's Motion to Reconsider Ruling and to Challenge Polygraph Results (Dk. 608) in the December 12, 1995, memorandum and order (Dk. 616). In that memorandum and order, the court did not specifically discuss the alleged "defective" question, but instead overruled the defendant's motion based upon the government's response.

In short, the court is satisfied that the second polygraph examination was not infirm and that nothing proffered by Conway demonstrates that

he is otherwise entitled to relief solely based upon the manner with which the second polygraph examination was performed, administered or evaluated.

9. Because each defendant faces substantial terms of incarceration, the possibility of a § 5K1.1 motion was apparently critical to each defendant's willingness to enter a guilty plea. Counsel for certain defendants indicated that had the government not made such assurances regarding the definition of "substantial assistance," they would not have encouraged their respective client to accept the plea agreement because their client was only able to provide information regarding his own participation in the conspiracy charged in the second superseding indictment and did not possess information regarding other crimes.

defendant satisfied the conditions necessary to obtain the performance of the government set forth in paragraph 7 a. (dismissal of remaining counts of the second superseding indictment and no further criminal charges resulting form the activities which form the basis of the second superseding indictment), fulfillment of those conditions did not automatically qualify each defendant for a § 5K1.1 motion. Paragraph 7b. provides that *"[i]f appropriate,* prior to sentencing, to file a motion pursuant to U.S.S.G. § 5K1.1, to reduce his sentence to reflect his substantial assistance, if any, in the investigation and/or prosecution of another person(s) involved in this offense or other offenses." (Emphasis added). Read in conjunction with paragraph 8, it is clear that under the terms of the plea agreement, the government is allotted the discretion to determine whether a defendant has provided substantial assistance in the investigation and/or prosecution *of another person(s)* involved in this offense *or other offenses.*[10] It is therefore appropriate for the government in this case to consider whether the information provided by each defendant was helpful in the prosecution of another person in the crimes charged in the second superseding indictment or other crimes in determining whether each defendant has provided substantial assistance. Simply put, the defendants' construction of the plea agreement is contrary to its express terms.[11]

▮ Nor does the court find that the prosecution has otherwise breached the plea agreement or acted in bad faith. Based upon the court's review of the information each defendant provided during his respective debriefing, the government's assessment of the information provided by the defendants as unhelpful is not unreasonable. The court is also satisfied that the government has demonstrated a reasonable basis for filing a § 5K1.1 motion on behalf of Douglas but choosing not to file a motion on behalf of the other defendants. The information submitted by the government for in camera inspection indicates that it was government's belief that it was Douglas' decision to enter a guilty plea and his willingness to cooperate with the government that swayed his codefendants to enter pleas of guilty. Such a perception by the government forms a reasonable basis for its decision to file a § 5K1.1 motion on behalf of Douglas but not on behalf of the other defendants. *See* U.S.S.G. § 5K1.1(a)(1)–(5).

Moreover, although three of the defendants "passed" a second polygraph examination, the government, still persists in its belief that the defendants have not been completely forthcoming in their disclosure of information or that the information that the defendants have provided has not substantially assisted the government. Based upon all of the information submitted, the court cannot conclude that such an assessment is made in bad faith.

**3. EVEN IF THE DEFENDANTS ARE NOT ENTITLED TO SPECIFIC PERFORMANCE OF THE PLEA AGREEMENTS, IS IT NEVERTHELESS APPROPRIATE TO ALLOW THE DEFENDANT(S) TO WITHDRAW THEIR PLEAS?**

▮ Fed.R.Crim.P. 32(e)[12] provides in pertinent part: "If a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may

**10.** In its January 5, 1996, brief the government suggests that its decision to not file a § 5K1.1 motion or a Fed.R.Crim.P. 35 motion is justified based upon the defendants' failure to provide information regarding crimes other than those charged in the second superseding indictment. During oral argument, the government clarified its position, suggesting that its decision to not file a § 5K1.1 motion was not based upon the defendants' failure to provide information regarding crimes other than those charged in the second superseding indictment.

**11.** In its July 20, 1995, memorandum and order, the court rejected the government's contention that the defendants were obligated to answer

questions during the polygraph examination which dealt with allegations contained in the second superseding indictment and discovery in this matter, whether or not discussed in the oral debriefing. 899 F.Supp. at 519. The court's discussion of paragraph 7 on pages 519–520 was directed to the limited issue of the scope of the polygraph examinations and was not intended to be a definitive analysis of the operation of the entire plea agreement.

**12.** "Subdivision (e), which addresses the topic of withdrawing pleas, was formerly subdivision (d). Both provisions remain the same except for minor stylistic changes." *Notes of Advisory Committee on Rules,* 1994 Amendment.

33

permit the plea to be withdrawn if the defendant shows any fair and just reason." " '[O]ne who enters a guilty plea has no right to withdraw it.' " *United States v. Burger,* 964 F.2d 1065, 1070 (10th Cir.1992) (*quoting United States v. Hickok,* 907 F.2d 983, 985 (10th Cir.1990) (*quoting Barker v. United States,* 579 F.2d 1219, 1223 (10th Cir.1978))); *see United States v. Gines,* 964 F.2d 972, 980 (10th Cir.1992) ("The plea also narrows the 'avenue of escape' for a defendant in that he has no *right* to withdraw that plea once it is knowingly and voluntarily entered."), *cert. denied,* 506 U.S. 1069, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993).

 The standards for determining whether it is appropriate to withdraw a guilty plea prior to sentencing are apparently well settled in the Tenth Circuit:

Defendant has the burden of establishing that there is a fair and just reason for allowing withdrawal of his guilty plea, and in determining whether Defendant has met this burden, we consider the following factors:

(1) whether the defendant has asserted his innocence,

(2) prejudice to the government,

(3) delay in filing defendant's motion,

(4) inconvenience to the court,

(5) defendant's assistance of counsel,

(6) whether the plea is knowing and voluntary, and

(7) waste of judicial resources.

*United States v. Elias,* 937 F.2d 1514, 1520 (10th Cir.1991). "It is within the sound discretion of the [district] court to determine what circumstances justify granting such a motion." *United States v. Wade,*

940 F.2d 1375, 1377 (10th Cir.1991) (citation omitted).

*United States v. Gordon,* 4 F.3d 1567, 1572–1573 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994). *See United States v. Guthrie,* 64 F.3d 1510, 1513 (10th Cir.1995). "[D]issatisfaction with the length of a sentence is an insufficient reason to withdraw a plea." *Gordon,* 4 F.3d at 1573.

 Although the court concludes that the defendants are not entitled to specific performance of the plea agreements, the court concludes a fair and just reason exists for each defendant to withdraw his plea. Each defendants' counsel, as officers of the court, have indicated to the court that it was their individual and collective understanding that the government, in determining whether each defendant had provided "substantial assistance" to the government, would define "substantial assistance" to mean that each defendant would provide complete and truthful disclosure of information relevant to his own participation in the conspiracy charged in the second superseding indictment. Based upon that understanding, counsel each explained to their respective clients that same definition of "substantial assistance." In reasonable reliance upon their counsel's construction of the plea agreements,[13] each defendant entered a plea of guilty. Because each defendant entered a plea of guilty based upon the same incorrect construction and interpretation of the written plea agreement, the court deems it appropriate to permit each defendant to withdraw their pleas of guilty. *See North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162

**13.** In light of defense counsels' discussions with the government's attorney, defense counsels' construction of the plea agreement is not patently unreasonable. Counsel apparently believed that paragraphs 4, 5 and 6 set forth the specific conditions each defendant must fulfill to obtain the government's performance of paragraphs 7a and 7b. Because those paragraphs set forth with specificity several conditions the defendants must fulfill to trigger the government's obligations under the plea agreement, counsel may have believed that the agreement required no further act by a defendant to obtain not only dismissal of the remaining counts but a § 5K1.1 motion as well.

However, upon closer inspection, by its express terms the government only agreed to dis-

miss the remaining counts of the second superseding indictment and to bring no further criminal charges against a defendant who fulfilled the conditions set forth in paragraphs 4, 5, and 6. Had the defendants not fulfilled the conditions set forth in paragraphs 4, 5 and 6, under no circumstance would the government have been obligated to file a § 5K1.1 motion. Even if the defendants fulfilled the requirements of paragraphs 4, 5 and 6, the government only agreed to file a § 5K1.1 motion if, in its discretion, it deemed it appropriate. In short, the defendants' unilateral belief that they had fulfilled the conditions set forth in paragraphs 4, 5 and 6 does not automatically qualify the defendants to a § 5K1.1 motion.

**1452**

(1970) (a guilty plea must "represent [ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant."); *United States v. Wright, Jr.,* 43 F.3d 491 (10th Cir.1994) ("The Supreme Court has often reiterated that a defendant's guilty plea must be knowing and intelligent to be a constitutional basis for conviction."); *United States v. Libretti,* 38 F.3d 523, 529 (10th Cir.1994) ("A defendant's decision to plead guilty must be deliberate and intelligent and chosen from available alternatives.") (citation omitted), *aff'd,* — U.S. ——, 115 S.Ct. 1398, 131 L.Ed.2d 287 (1995); *United States v. Williams,* 919 F.2d 1451, 1456 (10th Cir.1990) ("[T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea."), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1604, 113 L.Ed.2d 667 (1991). In this court's opinion, the existence of a fundamental misunderstanding of the requirements and operation of the plea agreement is a fair and just reason for permitting each defendant to withdraw his plea. *See United States v. Pressley,* 602 F.2d 709, 711 (5th Cir.1979) ("If [the defendant] was mistaken as to the terms of the plea bargain, his original plea must be deemed less than a fully knowledgeable waiver of his rights.").

By this order, the guilty pleas of Ailsworth, Mock, Stewart and Conway are deemed withdrawn. In the near future, the court will set a conference to discuss with counsel the setting of this matter for trial.

IT IS THEREFORE ORDERED that Stewart's "Motion to compel performance of plea agreement" (Dk. 617), Conway's "Motion to compel performance of plea agreement" (Dk. 621), Undra Mock's "Motion to compel performance of plea agreement" (Dk. 622), Ailsworth's "Renewed motion to enforce plea agreement" (Dk. 628) are denied in part and granted in part. The defendants' requests for specific performance of the plea agreements are denied. The defendants' alternative requests to withdraw their respective guilty pleas are granted.